# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

CARL R. KAUFFMAN, III,                :
    Plaintiff                            :
                                         :    No. 1:13-cv-00659
v.                                    :
                                         :    (Judge Kane)
OFFICER DANIEL BARBAGELLO, et al.,    :
    Defendants                           :

## MEMORANDUM

Presently pending before the Court is Defendants' motion to dismiss Plaintiff's complaint for failure to state a claim upon which relief can be granted. (Doc. No. 12.) The motion has been fully briefed and is ripe for disposition. For the reasons that follow, the Court will grant Defendants' motion in part and deny in part.

## I.    BACKGROUND[1]

On March 21, 2012, at approximately 10:00 p.m., Plaintiff Carl Kauffman was riding his motorcycle east on Route 30 after attending an evening class at the Franklin County Career and Technology Center. (Doc. No. 1 ¶¶ 11-12.) As the car traveling in front of him made a left turn, Plaintiff "casually passed on the right hand side." (Id. ¶ 12.) Defendant Daniel Barbagello, a Patrolman First Class for the Cumberland Township Police Department, observed Plaintiff as he passed on the left side of the car and turned around to follow him. (Id. ¶ 13.) Defendant Barbagello signaled for Plaintiff to pull over, and Plaintiff pulled over in the parking lot at the top of a hill. (Id. ¶¶ 14-15.) When Defendant Barbagello approached Plaintiff, he asked: "Were you trying to run

---

[1] In stating the relevant facts, the Court must accept Plaintiff's factual allegations as true and "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004).

from me?" (<u>Id.</u> ¶ 16.) Plaintiff replied in the negative and explained that he "was just looking for a safe place to pull over." (<u>Id.</u> ¶ 17.)

Over the next several minutes, Defendant Barbagello "interrogated Plaintiff about his drug and alcohol abuse, and seemingly tried to trick him into giving answers that would suggest his guilt." (<u>Id.</u> ¶ 20.) Plaintiff complied with Defendant Barbagello's requests and explained that he neither used drugs nor was drunk. (<u>Id.</u> ¶ 21.) At some point, Defendant Barbagello called for back up, and Defendant John Doe I arrived at the scene shortly thereafter. (<u>Id.</u> ¶ 22.) Defendants Barbagello and John Doe I searched Plaintiff's pockets, but they found nothing incriminating. (<u>Id.</u> ¶¶ 23-24.)

Defendants Barbagello and John Doe I then began asking Plaintiff to perform sobriety tests. (<u>Id.</u> ¶ 25.) Plaintiff attempted to comply with each request but "became nervous because of the way he was being treated." (<u>Id.</u> ¶ 26.) First, Defendant Barbagello asked Plaintiff "to take ten steps heel to toe." (<u>Id.</u> ¶ 27.) Plaintiff complied with this request "without any problems," but Defendant Barbagello "accused Plaintiff of failing the test because he took ten steps instead of three steps, as he claims he directed him to take." (<u>Id.</u> ¶ 28.) Plaintiff apologized for mishearing the instruction. (<u>Id.</u> ¶ 29.) During this time, Plaintiff "began to tear up from the stress of the long work day and frustration at not knowing what to do to prove his innocence." (<u>Id.</u> ¶ 30.) Defendants Barbagello and John Doe I "began accusing and bullying Plaintiff, stating that because he was nervous and starting to cry, 'there [was] something wrong with [him].'" (<u>Id.</u> ¶ 31.)

Despite passing other sobriety tests, Defendants Barbagello and John Doe I administered a pen light test because Plaintiff appeared "teary-eyed and stressed." (<u>Id.</u> ¶ 32.) They informed Plaintiff that he failed the test "because his eyes were red." (<u>Id.</u> ¶ 33.) Defendants Barbagello and

John Doe I then told Plaintiff that he had failed a sufficient number of tests to warrant his arrest and asked Plaintiff to take a Portable Breath Test, which Plaintiff passed. (<u>Id.</u> ¶¶ 35-36.) One defendant, who was not specifically identified in Plaintiff's complaint, then commented that Plaintiff "must be on drugs." (<u>Id.</u> ¶ 37.) Defendants Barbagello and John Doe I then instructed Plaintiff to call someone to pick him up. (<u>Id.</u> ¶ 38.) Plaintiff explained that no one was available to pick him up because "[h]is wife and three children were already sleeping and he could not wake up his wife to pack up all their children to come get him." (<u>Id.</u> ¶ 39.)

Because Plaintiff had no one to call to pick him up, Plaintiff alleges that the officers handcuffed him and "pushed him into the back of the squad car." (<u>Id.</u> ¶ 41.) Defendant Barbagello, however, informed Plaintiff that he was not under arrest. (<u>Id.</u> ¶ 42.) Plaintiff asked if he could leave, but Defendant Barbagello said, "No." (<u>Id.</u> ¶ 43.) Defendants Barbagello and Doe I then drove Plaintiff to the nearest Pennsylvania State Police Barracks to conduct a drug recognition evaluation. (<u>Id.</u> ¶ 44.) After arriving at the barracks, one of the defendants read Plaintiff his <u>Miranda</u> rights, and Defendant John Doe II "subjected [him] to another hour's worth of testing, where he retook several of the same tests he had taken while pulled over . . . ." (<u>Id.</u> ¶ 45-46.) During this series of testing, the officers "again bullied and attempted to trick Plaintiff into failing the tests." (<u>Id.</u> ¶ 47.) Plaintiff, in an attempt to ensure that he complied with the officers' instructions, "began repeating their commands." (<u>Id.</u> ¶ 48.) This repetition angered Defendant Doe II. (<u>Id.</u> ¶¶ 49, 51.) "At this point, Plaintiff became scared because the Defendants were clearly angry at him and he was afraid he was going to fail the tests." (<u>Id.</u> ¶ 52.) Plaintiff began to cry again. (<u>Id.</u> ¶ 53.) Defendant Doe II told Plaintiff that "[t]here was something wrong with [him] if [he was] scared." (<u>Id.</u> ¶ 54.)

None of the tests indicated that Plaintiff had drugs or alcohol in his system. (Id. ¶ 55.) Nevertheless, Plaintiff alleges that Defendants Barbagello, Doe I, and Doe II refused to allow him to leave the scene. (Id. ¶ 56.) Rather, they informed him that he could either go to jail or go to the hospital. (Id. ¶ 57.) Plaintiff chose to go to the hospital, where he waited approximately one hour before he was told to take a urine test, which came back negative for drug use. (Id. ¶¶ 58-60.) The officers then attempted to involuntarily commit Plaintiff under Section 302 of the Pennsylvania Mental Health Procedures Act. (Id. ¶ 61.) A doctor interviewed Plaintiff but refused to involuntarily commit him under Section 302. (Id. ¶ 62.)

At this point, "Plaintiff had been held for about [five] hours," and it was approximately 3:00 a.m. (Id. ¶ 63.) At some point, the officers left the scene and an unnamed defendant issued Plaintiff a citation for passing in a "No Passing Zone." (Id. ¶ 77; Doc. No. 3.) The doctor informed Plaintiff that the officers had instructed him not to allow Plaintiff to ride his motorcycle. (Doc. No. 1 ¶ 64.) Plaintiff then called the Pennsylvania State Police to obtain more information, and Defendant Barbagello returned his call. (Id. ¶¶ 65-66.) Defendant Barbagello "still seemed irritated and [was] unwilling to answer Plaintiff's questions." (Id. ¶ 66.) Plaintiff asked him for the location of his keys and helmet, but Defendant Barbagello refused to answer this question, and instead told him, "I wouldn't ride for about a day." (Id. ¶¶ 67-68.) Plaintiff then asked: "If I walk up and get my bike and ride it home, will you arrest me?" (Id. ¶ 69.) Defendant Barbagello told him he could not answer that question. (Id. ¶ 70.) After Plaintiff again asked for the location of his keys, Defendant Barbagello told him that he put them in his helmet. (Id. ¶ 71.)

Before leaving, Plaintiff again attempted to call the Pennsylvania State Police Barracks to inquire whether he could drive his motorcycle. (Id. ¶ 72.) The police, however, would not answer

4

his question.  (Id. ¶ 73.)  Plaintiff then drove his motorcycle home.  (Id. ¶ 74.)  After spending most of his night held in police custody, Plaintiff was unable to go to work the next morning, and instead was forced to call off work.  (Id. ¶ 75.)

The next day, Plaintiff contacted Defendant Cumberland Township to speak to someone about his treatment and spoke with the on-duty supervisor.  (Id. ¶ 78.)  The supervisor informed Plaintiff that he would need to speak to Defendant Timothy Biggins, a Sergeant for the Township Police Department, who would be in the office on March 23, 2012.  (Id. ¶ 79.)  Plaintiff called back on March 23, 2012 but was unable to speak to Defendant Biggins.  (Id. ¶ 80.)  The next day, Plaintiff called and left another message for Defendant Biggins.  (Id. ¶ 81.)  After not hearing back, Plaintiff then contacted Defendant Don Boehs, the Chief of Police.  (Id. ¶ 82.)  Defendant Boehs did not answer the call or subsequently return Plaintiff's call.  (Id. ¶ 83.)

On April 2, 2012, Defendant Biggins called Plaintiff back and "became irritated and told Plaintiff that he already knew what happened from speaking to Defendant Barbagello."  (Id. ¶ 84.)  Plaintiff attempted to file a complaint with the Police Department, but Defendant Biggins refused to accept any complaint.  (Id. ¶ 85.)  Defendant Biggins informed Plaintiff that Defendant Barbagello did nothing wrong and that he would have handled the situation the same way.  (Id. ¶ 87.)

Approximately one year later, Plaintiff initiated this action by filing a civil rights complaint against Defendants Barbagello, Biggins, Boehs, Cumberland Township, John Doe I, and John Doe II. (Doc. No. 1.)  In the complaint, Plaintiff alleges the following: (1) that Defendants Barbagello, Doe I, and Doe II violated his right to be free from unreasonable searches and seizures under the Fourth Amendment; (2) that all defendants violated his right to substantive due process under the

Fifth and Fourteenth Amendments; (3) that Defendants Biggins, Doe I and Doe II failed to intervene when Defendant Barbagello violated his right to be free from excessive force; (4) that Defendants Biggins, Boehs, and Cumberland Township failed to train officers; (5) false arrest and false imprisonment against all individual defendants under Pennsylvania law; (6) abuse of process against all individual defendants under Pennsylvania law; and (7) intentional infliction of emotional distress against all individual defendants under Pennsylvania law.

## II.    STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint. Kost v. Kozakiewicz, 1 F.3d 176, 183 (3d Cir. 1993).  In reviewing a motion to dismiss, a court may "consider only the allegations in the complaint, exhibits attached to the complaint, matters of public record, and documents that form the basis of a claim." Lum v. Bank of Am., 361 F.3d 217, 221 n.3 (3d Cir. 2004).  The motion will only be properly granted when, taking all factual allegations and inferences drawn therefrom as true, the moving party is entitled to judgment as a matter of law. Markowitz v. Ne. Land Co., 906 F.2d 100, 103 (3d Cir. 1990).

The burden is on the moving party to show that no claim has been stated. Johnsrud v. Carter, 620 F.2d 29, 33 (3d Cir. 1980).  Thus, the moving party must show that Plaintiff has failed to "set forth sufficient information to outline the elements of his claim or to permit inferences to be drawn that those elements exist." Kost, 1 F.3d at 183 (citations omitted).  A court "need not credit a complaint's 'bald assertions' or 'legal conclusions' when deciding a motion to dismiss." Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Although the 12(b)(6) standard does not require "detailed factual allegations," there must be a "'showing,' rather than a blanket assertion of an entitlement to relief . . . . [F]actual allegations must be enough to raise a right to relief above

the speculative level." Phillips v. Cnty. of Allegheny, 515 F.3d 224, 231-32 (3d Cir. 2008) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Put otherwise, a civil complaint must "set out 'sufficient factual matter' to show that the claim is facially plausible." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Ashcroft v. Iqbal, 556 U.S. 662 (2009)).

## III. DISCUSSION

### A. Count I: Fourth Amendment claims against Defendants Barbagello, Doe I, and Doe II

In Count I, Plaintiff alleges that Defendants Barbagello, Doe I, and Doe II violated his right to be free from unreasonable searches and seizures, and subjected him to unlawful arrest and detention in violation of the Fourth Amendment to the United States Constitution. (Doc. No. 1 ¶¶ 91-100.)[2] Defendant Barbagello argues that the stop of Plaintiff was lawful, and therefore Plaintiff's claims that Defendants unlawfully seized, searched, arrested, and detained him in contravention of the Fourth Amendment must be dismissed as a matter of law. (Doc. No. 15 at 25-26.)

#### 1. Unlawful seizure

A seizure under the Fourth Amendment occurs when, "taking into account all of the circumstances surrounding the encounter, the police conduct would 'have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business.'" Kaupp v. Texas, 538 U.S. 626, 629 (2003) (citation omitted). The United States Supreme Court has established numerous context-based circumstances in which a "seizure" under the Fourth Amendment is effected, including "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of

---

[2] Defendants Doe I and II have not offered a response to Plaintiff's complaint.

language or tone of voice indicating that compliance with the officer's request might be compelled.'" Id. (citation omitted). Traffic stops constitute seizures for Fourth Amendment purposes. Whren v. United States, 517 U.S. 806, 809-10 (1996). "[A] traffic stop will be deemed a reasonable 'seizure' when an objective review of the facts shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." United States v. Delfin-Colina, 464 F.3d 392, 398 (3d Cir. 2006).

When an officer conducts a lawful stop of a motorist for an observed traffic infraction, the officer may question the motorist "on matters reasonably related in scope to the justification for the stop of the vehicle." Padilla v. Miller, 143 F.Supp.2d 453, 467 (M.D. Pa. 1999) (citing Berkemer v. McCarty, 468 U.S. 420, 439 (1984)). A lawful traffic stop is analogous to a Terry stop, which allows an officer who "lack[s] probable cause to make an arrest but ha[s] a reasonable basis to suspect an individual . . . [to] briefly detain that person in order to conduct an inquiry 'reasonably related in scope to the justification for [the stop].'" Id. (quoting Terry v. Ohio, 392 U.S. 1, 29 (1968)); Delfin-Colina, 464 F.3d at 397. An officer may conduct a pat-down search of the stopped motorist "where the officer is able to point to specific and articulable facts which, taken together with rational inferences from those facts, warrant that intrusion." United States v. Moorefield, 111 F.3d 10, 13 (3d Cir. 1997). However, "[a] seizure that is justified solely by the interest in issuing a warning ticket to the driver can become unlawful if it is prolonged beyond the time reasonably required to complete that mission." Illinois v. Caballes, 543 U.S. 405, 407 (2005).

The Court finds that Plaintiff's allegations that Defendants Barbagello and Doe I detained, handcuffed, and transported him to the Pennsylvania State Police Barracks after he passed the Portable Breath Test state a claim for unlawful seizure under the Fourth Amendment. See James

v. City of Wilkes-Barre, 700 F.3d 675, 681-82 (3d Cir. 2012) ("[A] seizure results from 'coercive pressure from state actors resulting in a <u>significant</u>, present disruption of the targeted person's freedom of movement . . . [and] typically involves an almost complete restriction of movement . . . (as when a police officer tells a suspect to get in the back of the squad car but declines to handcuff him)." <u>Id.</u> (citations omitted).

Here, after Defendants Barbagello and Doe I finished conducting roadside sobriety tests which revealed that Plaintiff was not under the influence of alcohol, they nonetheless refused to allow Plaintiff to leave on his own. (Doc. No. 1 ¶¶ 35-40.) During the traffic stop, Defendants Barbagello and Doe I outnumbered Plaintiff, and he claims their behavior intimidated him such that he "began to tear up from the stress." (<u>Id.</u> ¶ 30.) Although Defendants Barbagello and Doe I gave Plaintiff the option to have someone else come pick him up, their words and actions as set forth in Plaintiff's complaint make clear that Plaintiff was not free to leave on his own accord. (<u>Id.</u> ¶¶ 38-39). As alleged, Defendants Barbagello's and Doe I's conduct, even before they handcuffed Plaintiff, "present[ed] a disruption of [Plaintiff's] freedom of movement." <u>James</u>, 700 F.3d at 681.

Defendants went on to handcuff Plaintiff and place him in the back of a police cruiser. (Doc. No. 1 ¶ 41.) In this context, such conduct may convey to a reasonable person that he is not "free to decline the officers' requests" that he be taken to the Pennsylvania State Police Barracks. <u>See</u> <u>United States v. Wilson</u>, 413 F.3d 382, 386 (3d Cir. 2005). By first refusing to allow Plaintiff to leave the site of the traffic stop on his own accord, and then placing him in the back of the police car in handcuffs for transport to the police barracks, Defendants effected a "complete restriction of [Plaintiff's] movement" amounting to a seizure. <u>James</u>, 700 F.3d at 681.

Defendant Barbagello argues that Plaintiff's Fourth Amendment claims fail as a matter of

law under the doctrine of <u>Heck v. Humphrey</u>, which holds that "civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments [and] applies to Section 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction." 512 U.S. 477, 486 (1994); (Doc. No. 15 at 25-26.) However, <u>Heck</u> is inapposite here, because Plaintiff does not challenge the citation he received for unlawful passing, but rather the prolonged stop, including being handcuffed, transported to the Pennsylvania State Police Barracks, and subjected to sobriety tests and an involuntary mental health evaluation.

Plaintiff sets forth sufficient facts to support a claim that Defendant Barbagello unlawfully seized him in violation of the Fourth Amendment. The Court will therefore deny Defendant Barbagello's motion to dismiss Plaintiff's claim that Defendant Barbagello violated Plaintiff's Fourth Amendment right to be free from unlawful seizure.

### 2. Unlawful search

Plaintiff also asserts that Defendants Barbagello, Doe I, and Doe II unlawfully searched him in violation of the Fourth Amendment. (Doc. No. 1 at 14.) Although police officers may conduct a "frisk" of a person when they have "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion," officers may not perform a full search of a person without probable cause. <u>Terry v. Ohio</u>, 392 U.S. 1, 21 (1968). Plaintiff alleges that after Defendant Doe I arrived at the scene of the traffic stop, both he and Defendant Barbagello asked Plaintiff, "What is in your pockets? Let me check." (<u>Id.</u> ¶ 23.) Defendants then checked Plaintiff's pockets but "found nothing incriminating," which Plaintiff alleges violated his Fourth Amendment right to be free from unreasonable search. (<u>Id.</u> ¶ 14, 24.)

The Court finds that Plaintiff's allegation that Defendants Barbagello and Doe I searched his

pockets states a claim for unlawful search under the Fourth Amendment. Defendant Barbagello makes no specific arguments as to why his and Defendant Doe I's conduct in checking Plaintiff's pockets did not constitute a violation of Plaintiff's Fourth Amendment right to be free from an unlawful search. Instead, Defendant Barbagello appears to rely generally on the concept that Heck precludes Plaintiff from asserting any Fourth Amendment claims. (Doc. No. 15 at 17-18.) As discussed in Section III.A.1, Heck does not require Plaintiff's Fourth Amendment claims to be dismissed. Plaintiff asserts that Barbagello and Doe I performed a full search of his pockets without seeking his consent. (Doc. No. 1 ¶¶ 23-24.) Taking the facts as alleged in Plaintiff's complaint as true, Plaintiff has adequately stated facts to support a violation of the Fourth Amendment's protection again unreasonable searches. Defendant Barbagello's motion to dismiss Plaintiff's Fourth Amendment unlawful search claim is therefore denied.

### 3.    Unlawful arrest

Plaintiff asserts a claim for unlawful arrest under the Fourth Amendment against Defendants Barbagello, Doe I, and Doe II. (Doc. No. 1 at 14.) "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012) (citation omitted). Defendant Barbagello argues that Plaintiff was not arrested and relies on the holdings in Whitmill v. City of Philadelphia and Owens v. County of Delaware, which respectively held that placing a person in a police vehicle for transportation does not necessarily effect an arrest, and handcuffing a person does not necessarily effect an arrest. Whitmill v. City of Phila., 29 F. Supp. 2d 241, (E.D. Pa. 1998); Owens v. Cty. of Del., No. 95-4282, 1996 WL 476616, at *10 (E.D. Pa. Aug. 15, 1996). (See also Doc. No. 23 at 3.)

### a. Whether Plaintiff was arrested

In determining whether police formally arrested an individual, "the reasonableness of the intrusion is the touchstone, balancing the need of law enforcement officials against the burden on the affected citizens and considering the relation of the policeman's actions to his reason for stopping the suspect." United States v. Edwards, 53 F.3d 616, 619 (3d Cir. 1994). The Court uses a "totality of the circumstances" standard in measuring the reasonableness of police conduct against the intrusion on the person allegedly arrested. United States v. Sharpe, 470 U.S. 675, 685 (1984). When a police officer's words and actions would convey to a reasonable person that he "was being ordered to restrict his movement," the Court will find that the police made a "show of authority," which may result in a seizure and formal arrest under the Fourth Amendment. California v. Hodari D., 499 U.S. 621, 628 (1991).

The Court finds that under the totality of the circumstances, Plaintiff's allegations fulfill the first prong of the unlawful arrest analysis. (See Doc. No. 1 ¶¶ 35-45.) Plaintiff alleges that he was not allowed to leave the scene of the traffic stop on his own accord. (Id. ¶ 43.) At no time was he considered a suspect in a violent crime, thus lessening the reasonableness of Defendants' decision to handcuff him for their own safety. See Whitmill, 29 F. Supp. 2d 241, 242 (E.D. Pa. 1998); (Doc. No. 1 ¶ 42.) Further, Defendants Barbagello and Doe I had already searched Plaintiff's pockets and had not found any weapons or other instrumentalities that could cause harm. (Id. ¶ 24.) Although any one of the steps Defendants Barbagello and Doe I took to detain Plaintiff and restrain his movement might not rise to the level of formal arrest alone, under the totality of the circumstances, Plaintiff alleges facts adequate to establish that Defendants Barbagello and Doe I arrested him. The Court will thus proceed to the second prong of the false arrest analysis.

### b. Whether Plaintiff's arrest was without probable cause

In order for Defendants Barbagello's and Doe I's warrantless arrest of Plaintiff to be lawful, it must be based on probable cause. Wright v. City of Phila., 409 F.3d 595, 601 (3d Cir. 2005). Officers have probable cause for an arrest if "at the moment the arrest was made . . . the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that [the suspect] had committed or was committing an offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). The Court must determine whether "the objective facts available to the officers at the time of arrest were sufficient to justify a reasonable belief that an offense was being committed." United States v. Glasser, 750 F.2d 1197, 1205 (3d Cir. 1984).

The Court finds that Plaintiff's allegations indicate Defendants Barbagello and Doe I did not have probable cause to arrest him, and thereby satisfy the second prong of the unlawful arrest analysis. As Plaintiff argues, the fact that Defendants Barbagello and Doe I were willing to release Plaintiff if someone was available to pick him up by the side of the road indicates that Defendants did not have information giving them a "fair probability" that Plaintiff committed or was committing a crime. (Doc. No. 1 ¶ 38.) Further, Plaintiff had already passed a Portable Breath Test, which showed that he was not under the influence of alcohol. (Id. ¶ 36.) When directly asked about drug and alcohol use, Plaintiff told Defendant Barbagello that he did not use drugs and was not drunk. (Id. ¶ 21.) From the facts as pled, Defendants Barbagello and Doe I appear to have based their assumption that Plaintiff was under the influence of drugs or alcohol on Plaintiff's becoming upset, crying, and developing red eyes during the traffic stop. (Id. ¶¶ 31-33.) However, the fact that Plaintiff became upset during a traffic stop is insufficient "to warrant a prudent man in believing that

[Plaintiff] had committed or was committing [the] offense" of driving under the influence. Beck, 379 U.S. at 91. Accordingly, Plaintiff's allegations satisfy both prongs of the unlawful arrest analysis, and Defendant Barbagello's motion to dismiss Plaintiff's unlawful arrest claim is denied.

### 4. Unlawful detention

Plaintiff asserts that the prolonged stop to which he was subjected, including his transport to the Pennsylvania State Police Barracks and later, to the hospital, constitute unlawful detention in violation of the Fourth Amendment. (Doc. No. 1 at 14.) To assert unlawful detention under the Fourth Amendment, Plaintiff must allege that he was seized within the meaning of the Fourth Amendment, and that police officers did not have probable cause to seize him. See James v. City of Wilkes-Barre, 700 F.3d 675, 682 (3d Cir. 2012). As discussed in Section III.A.1 and III.A.3.b above, Plaintiff alleges facts adequate to support his claims that he was unlawfully seized within the meaning of the Fourth Amendment, and that Defendants did not have probable cause to arrest him. Plaintiff has therefore alleged facts adequate to state a claim for unlawful detention under the Fourth Amendment, and consequently Defendant Barbagello's motion to dismiss Plaintiff's unlawful detention claim will be denied.

### B. Count II: Fifth and Fourteenth Amendment substantive due process claims against all defendants

Plaintiff claims that all Defendants violated his Fifth and Fourteenth Amendment rights to substantive due process when they engaged in "egregious conscious shocking mistreatment" under color of state law. (Doc. No. 1 ¶ 102.) "In a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Benn v. Universal Health Sys., Inc., 371 F.3d 165, 174 (3d Cir. 2004.) Whether conduct "shocks the conscience' is a matter of law for the

courts to decide." Id. (citing Rochin v. California, 342 U.S. 165, 172 (1952)). "Involuntary commitment under the [Pennsylvania Mental Health Procedures Act] does not in itself violate substantive due process." Benn, 371 F.3d at 174.

Plaintiff alleges that all defendants forced him to undergo a mental health evaluation pursuant to Section 302 of the Pennsylvania Mental Health Procedures Act (MHPA) in violation of his constitutional right to substantive due process. (Doc. No. 1 ¶¶ 57-62.) Plaintiff brings his claim against all defendants, but from the facts as pled, only Defendants Barbagello, Doe I, and Doe II were involved in transporting Plaintiff to the hospital and submitting him to a mental health evaluation. (See id. ¶¶ 44, 55-56 (placing Barbagello, Doe I, and Doe II as the only defendants at the police barracks when "Defendants" told Plaintiff, "you can go to jail or you can go to the hospital.")) (Id. ¶ 57.) Because Plaintiff's substantive due process claim is based on his being subjected to a mental health evaluation for involuntary commitment, Plaintiff cannot adequately state a claim for violation of his substantive due process rights against any defendants who were not involved in his involuntary mental health evaluation. The Court therefore finds that Plaintiff's substantive due process claims in Count II against Defendants Sergeant Biggins, Chief Don Boehs, and Cumberland Township should be dismissed as a matter of law.

Further, although Plaintiff captions Count II as "Violation of Fifth and Fourteenth Amendment Right to Substantive Due Process," he limits his arguments to Fourteenth Amendment jurisprudence. (Doc. No. 1 ¶¶ 102-109; Doc. No. 22 at 10-12.) Because Plaintiff advances no specific arguments regarding his claim that his Fifth Amendment right to substantive due process was violated, he has not sufficiently stated a claim under the Fifth Amendment, and the Court finds that Plaintiff's Fifth Amendment claim should be dismissed as to all defendants.

1.     **Plaintiff's Fourteenth Amendment substantive due process claims against Defendants Barbagello, Doe I, and Doe II**

Plaintiff alleges that Defendants Barbagello, Doe I, and Doe II's conduct in forcing him to choose between jail or the hospital, and subsequently submitting him for an involuntary mental health evaluation, was "conscience shocking" because he had not exhibited behavior indicating mental instability. (Doc. No. 1 ¶ 107.) The MHPA allows peace officers who observe an individual behaving in such a way that gives an officer "reasonable grounds to believe that [the individual] is severely mentally disabled and in need of immediate treatment," to submit that individual to a mental health evaluation by medical personnel who are to determine whether that individual should be involuntarily committed. 50 Pa. Stat. Ann. tit. 50 § 7302(a)(2). The MHPA further provides civil and criminal immunity for peace officers participating in an involuntary commitment process, so long as their conduct is without "willful misconduct or gross negligence." 50 Pa. Stat. Ann. § 7114(a). Thus, the MHPA shields the conduct of Defendants Barbagello, Doe I, and Doe II in submitting Plaintiff for a mental health evaluation unless Plaintiff establishes that Defendants engaged in "willful misconduct or gross negligence." Id.

The Third Circuit looks to Pennsylvania law to determine what constitutes "willful misconduct" and "gross negligence" under the MHPA. See, e.g., Doby v. DeCrescenzo, 171 F.3d 858, 875 (3d Cir. 1999). "Willful misconduct" occurs "when the danger to the plaintiff, though realized, is so recklessly disregarded that, even though there be no actual intent, there is at least a willingness to inflict injury, a conscious indifference to the perpetration of the wrong." Id. (citations omitted). Gross negligence is characterized by "facts indicating more egregiously deviant conduct than ordinary carelessness, inadvertence, laxity, or indifference . . . . The behavior of the defendant must be flagrant, grossly deviating from the ordinary standard of care." Id. (citations omitted).

Plaintiff has not met the pleading standard for willful misconduct or gross negligence here. Plaintiff conclusorily pleads that Defendants were "without evidence of an intent or threat [by Plaintiff] to harm himself or others," and that "Defendants forced Plaintiff to submit to mental evaluation without any evidence of a clear and present danger, and with no threats made by Plaintiff to himself or others." (Doc. No. 1 ¶¶ 105, 107.) Plaintiff has not specifically pled that Defendants engaged in willful misconduct or gross negligence in subjecting him to a mental health evaluation, such that their conduct would not be shielded by the qualified immunity protection of the MHPA. Accordingly, the Court finds that Plaintiff's substantive due process claims should be dismissed without prejudice. Plaintiff may file an amended complaint with the proper pleading for a substantive due process claim under the MHPA.

### C. Count III: Excessive Force–Failure to Intervene claims against Defendants Doe I, Doe II, and Biggins

Plaintiff asserts a "failure to intervene" claim against Defendants Doe I, Doe II, and Biggins for their alleged failure to intervene to prevent Defendant Barbagello's alleged use of excess force. (Doc. No. 1 ¶¶ 111-114.) The Fourth Amendment prohibits police officers from using excess force when making an arrest. Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999). Further, officers have "a duty to take reasonable steps to protect a victim from another officer's use of excessive force . . . if there is a realistic and reasonable opportunity to intervene." Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002).

Plaintiff has not alleged any facts to support a claim that Defendant Barbagello used excessive force, nor has he specifically brought a claim against Defendant Barbagello for excessive force. (See Doc. No. 1 ¶¶ 111-116.) Because Plaintiff has not pled facts to support a claim of excessive force against Defendant Barbagello, he cannot support claims against Defendants Doe I,

Doe II, and Biggins for failure to intervene and protect him from excessive force. Accordingly, the Court finds that Defendants' motion to dismiss Plaintiff's "excessive force–failure to intervene" claim will be granted as to Defendants Biggins, Doe I, and Doe II.

**D.    Count IV: <u>Monell</u> liability against Defendants Biggins, Boehs, and Cumberland Township**

In Count IV, Plaintiff brings a <u>Monell</u> claim pursuant to Section 1983 against Defendants Biggins, Boehs, and Cumberland Township for failure to train and supervise Defendants Barbagello and Doe I, whom Plaintiff alleges violated his Fourth, Fifth, and Fourteenth Amendment rights.[3] (Doc. No. 1 at 19.) Under the <u>Monell</u> doctrine, "[l]ocal governing bodies . . . can be sued directly under § 1983 for monetary, declaratory, or injunctive relief where . . . the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." 436 U.S. 658, 690 (1978). A municipality cannot be liable solely on the basis of <u>respondeat superior</u>, but will be liable if Plaintiff shows "that the municipality itself supported the violation of rights alleged." <u>Andrews v. City of Phila.</u>, 895 F.2d 1469, 1480 (3d Cir. 1990) (citing <u>Monell</u>, 436 U.S. at 692-95)). To establish that a municipality supported the violation of rights alleged, Plaintiff must show the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." <u>Monell</u>, 436 U.S. at 694.

To establish public policy or custom, Plaintiff must show that a "a policymaker is responsible

---

[3] Per the caption on Plaintiff's complaint, he brings suit against all Defendants in their individual and official capacities. (Doc. No. 1.) However, a claim based on <u>Monell</u> asserts municipal, rather than individual liability. 436 U.S. 658, 690. Thus, the Court will construe Plaintiff's Count IV claim as brought against Defendants Biggins and Boehs in their official rather than individual capacities.

either for the policy or, through acquiescence, for the custom" or that "authorized policymakers approved a subordinate's decision <u>and the basis for it</u> . . . ." <u>Id.</u> at 1480-81 (citations omitted). If the policy or custom "does not facially violate federal law," then mere negligence will not suffice to establish causation, and Plaintiff must "demonstrat[e] that the municipal action was taken with deliberate indifference as to known or obvious consequences." <u>Kelly v. Borough of Carlisle</u>, 622 F.3d 248, 263 (3d Cir. 2010) (citations omitted). Determining who is a "policymaker" for <u>Monell</u> purposes is a matter of state law, and in Pennsylvania, a policymaker is an official with "final and unreviewable" policymaking authority "<u>in the particular area</u> of municipal business in question." <u>Hill v. Borough of Kurtztown</u>, 455 F.3d 255, 245 (3d Cir. 2006). However, "[a]n employee who lacks policymaking authority can still bind the municipality if a municipal policymaker delegated power to the employee or ratified his decision." <u>Kelly</u>, 622 F.3d 248, 264 (citations omitted). But, "[s]imply going along with discretionary decisions made by one's subordinates . . . is not a delegation to them of the authority to make policy." <u>Id.</u>

### 1. Plaintiff's <u>**Monell**</u> claims against Defendant Sergeant Biggins

Plaintiff alleges that under <u>Monell</u>, Defendant Biggins is liable for violations of Plaintiff's Fourth, Fifth, and Fourteenth Amendment rights. (Doc. No. 1 at 19.) Plaintiff asserts that a supervisor at the Cumberland Township Police Department told him that Defendant Biggins supervised Defendant Barbagello, that Plaintiff attempted to contact Defendant Biggins by phone for several days without success, and that when he finally spoke to him, Defendant Biggins "became irritated and told Plaintiff that he already knew what happened from speaking to Defendant Barbagello." (<u>Id.</u> ¶¶ 79-81, 84.) Further, Plaintiff asserts that he tried to file a complaint with Defendant Biggins which he refused to accept, and that Biggins told Plaintiff that he would have

handled the traffic stop precisely as Defendant Barbagello did.  (Id. ¶¶ 85-87.)

The Court finds that Plaintiff has not alleged facts to support a Monell claim against Defendant Biggins.  He has not pled facts to establish that Defendant Biggins is a "policymaker" for Monell purposes, or that Defendant Biggins delegated policymaking authority to Barbagello. Instead, he pleads that Defendant Biggins's conduct establishes Monell liability because "Defendants have not provided proper training and/or supervision of their officers so that they are fully equipped to react properly in the field while protecting the rights and liberties of United States Citizens."  (Id. ¶ 120.)  This statement is merely a legal conclusion.  Merely pleading that a named Defendant approved of a subordinate officer's actions without asserting facts to establish that Defendant exercised policymaking authority or delegated that authority to the subordinate cannot establish a claim under Monell.  Kelly, 622 F.3d at 264.  Therefore, because Plaintiff's Monell claim against Defendant Biggins does not assert that he is a policymaker for a public entity or that he either delegated policymaking authority to Defendant Barbagello or ratified his conduct, the Court will grant Defendant Biggins's motion to dismiss Plaintiff's Monell claim.

## 2.     Plaintiff's Monell claim against Defendant Chief Don Boehs

Plaintiff asserts that Defendant Don Boehs, Chief of the Cumberland Township Police Department, is liable under Monell for failing to train and supervise Defendants Barbagello and Doe I. (Doc. No. 1 at 19.)  Plaintiff alleges that he contacted Defendant Boehs, but Boehs did not answer and did not return his voicemail.  (Id. ¶¶ 82-83.)

The Court's analysis of Plaintiff's Monell claim against Defendant Boehs is identical to that brought against Defendant Biggins.  Plaintiff has not set forth any facts to establish that Defendant Boehs acted as a policymaker for Cumberland Township, as required to establish Monell liability.

Further, Plaintiff does not assert any facts that would establish Defendant Boehs delegated power to a subordinate or ratified a subordinate's actions. Accordingly, the Court will dismiss Plaintiff's Monell claim against Defendant Boehs.

### 3. Plaintiff's Monell claim against Cumberland Township

Plaintiff alleges that Defendant Cumberland Township failed to train and supervise Defendants Barbagello and Doe I. (Doc. No. 1 at 19.) To establish Monell liability for a municipality such as Cumberland Township, Plaintiff must show that the municipality set forth a policy or custom that facially violated constitutional or other federal law, or that "municipal action was taken with deliberate indifference as to known or obvious consequences." Kelly, 622 F.3d at 263 (3d Cir. 2010) (citations omitted). Plaintiff must identify a Cumberland Township policy or custom amounting "to deliberate indifference to the rights of people with whom the police come in contact," which generally "requires proof of a pattern of underlying constitutional violations." Carswell v. Borough of Homstead, 381 F.3d 235, 244 (3d Cir. 2004) (citations omitted). It is possible, but difficult, to prove deliberate indifference without establishing a pattern of underlying constitutional violations. Id. In addition to establishing "deliberate indifference," Plaintiff must show "that the [alleged] inadequate training caused the constitutional violation," as well as "a direct causal link between a municipal policy or custom and the alleged constitutional violation." Id. at 244-45 (citations omitted).

The Court finds that Plaintiff's allegations do not establish "deliberate indifference" on behalf of Cumberland Township, or "a direct causal link between a municipal policy or custom and the alleged constitutional violation." Id. Plaintiff asserts that "Defendant Cumberland Township has a policy, practice, and/or custom of unlawful violations of a citizens' [sic] civil rights" based on

the conduct of Defendants Barbagello and Doe I during the traffic stop, Defendant Biggins's behavior when Plaintiff spoke to him about the incident (including Biggins's statement that he agreed with Barbagello's conduct), his refusal to accept Plaintiff's citizen's complaint, and his condonation of "the actions of Defendants through policies and practices, verbal encouragement, and/or lack of acknowledgment of the incident." (Doc. No. 1 ¶ 119.)

First, Defendant Biggins's statement to Plaintiff that he agreed with Defendant Barbagello's conduct is inadequate to establish municipal liability under Monell. See Kelly, 622 F.3d at 264. Second, although Plaintiff's complaint points to specific incidents which he believes stemmed from Cumberland Township's policy or custom, he does not identify other instances of detention, drug and alcohol testing, or involuntary mental health evaluation that show an underlying pattern of constitutional violations by the police department. He also has not pled facts that would establish a direct, causal connection between a Cumberland Township policy or custom and alleged constitutional violations. Plaintiff's assertion that "Defendant Cumberland Township has a policy, practice, and/or custom of unlawful violations of a citizens' civil rights" is merely a legal conclusion, which the Court need not credit. Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Accordingly, the Court finds that Defendant Cumberland Township's motion to dismiss Plaintiff's Monell claim will be granted.

### E. Count V: State law claims for false arrest and imprisonment against all individual defendants

In Count V, Plaintiff brings pendent state law claims against all individual defendants for false arrest and imprisonment.[4] (Doc. No. 1 at 21.) Under Pennsylvania law, "false arrest" and

---

[4] Federal courts have jurisdictional power to hear state law claims when a Plaintiff asserts "a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made . . .'

"false imprisonment" share a common definition in certain contexts.  See Gagliardi v. Lynn, 285 A.2d 109, 110 (Pa. 1971) ("Detainment and confinement constitute the gravamen of the civil wrong committed by an individual who illegally asserts or employs authority over another while purportedly enforcing the law. This civil wrong can be denominated as either false arrest or false imprisonment.")  Id.  When a defendant allegedly acts "for the purpose of securing the administration of the law without actual legal justification, 'false arrest' is synonymous with false imprisonment." Id. at 111.  False arrest/imprisonment requires "(1) the detention of another person, and (2) the unlawfulness of such detention."  Renk v. City of Pittsburgh, 641 A.2d 289, 293 (Pa. 1994).  "A police officer may be held liable . . . for false imprisonment when a jury concludes that he did not have probable cause to make an arrest."  Id.

### 1. False arrest and imprisonment claims against Defendants Boehs and Biggins

Plaintiff pleads that only Defendants Barbagello, Doe I, and Doe II were involved directly in his physical detention.  (See Doc. No. 1 ¶¶ 14, 22, 46) (pleading that Defendants Barbagello, Doe I, and Doe II physically detained Plaintiff.)  (See also id. ¶¶ 82-87) (pleading Defendants Boehs's and Biggins's involvement was limited to telephone calls after the detention concluded.)  Because Plaintiff has not pled any facts to establish that Defendants Boehs and Biggins participated in his alleged unlawful detention, he has failed to state a state law claim for false arrest against them.  Accordingly, the Court will dismiss Plaintiff's state law claims for false arrest and imprisonment against Defendants Boehs and Biggins.

---

and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional case."  United Mine Workers of America v. Gibbs, 383 U.S. 715, 725 (1966) (quoting U.S. Const. Art. III, Section 2).  "The state and federal claims must derive from a common nucleus of operative fact."  Id.

## 2.   False arrest and imprisonment claims against Defendants Barbagello, Doe I, and Doe II

Plaintiff also alleges that Defendants Barbagello, Doe I, and Doe II are liable in their individual capacities for false arrest and imprisonment. (Doc. No. 1 at 21.) Plaintiff avers that the following occurred: Defendant Barbagello pulled him over in a traffic stop, questioned him about drug and alcohol use, and called for Defendant Doe I as back up. (Id. ¶¶ 14, 20, 22.) Defendant Doe I then assisted Defendant Barbagello in searching Plaintiff's pockets, handcuffing him, transporting him from the traffic stop to the nearest police barracks in a police car, reading him his <u>Miranda</u> rights, subjecting him to further sobriety testing, and finally submitting him for an involuntary mental health evaluation. (Id. ¶¶ 14, 20, 23-25, 40-45, 56-61.) Plaintiff alleges that Defendant Doe II performed sobriety tests on him at the police barracks and, along with Defendants Barbagello and Doe I, told Plaintiff that he could not leave the barracks after the tests concluded, and that he must choose between spending the night in jail or in the hospital. (Id. ¶¶ 46, 56-57.)

As discussed in Section A.1.3, Plaintiff adequately stated a claim under the Fourth Amendment to the United States Constitution for unlawful arrest against Defendants Barbagello, Doe I, and Doe II. Because "Pennsylvania state law false arrest claims and federal constitutional false arrest claims are co-extensive both as to elements of proof and elements of damages," the Court finds that Plaintiff adequately asserts state law claims for false arrest and imprisonment against Defendants Barbagello, Doe I, and Doe II. <u>Maiale v. Youse</u>, No. 03-5450, 2004 WL 1925004, at *12 (E.D. Pa. Aug. 27, 2004). Accordingly, the Court will not dismiss Plaintiff's claims of false arrest and imprisonment against Defendants Barbagello, Doe I, and Doe II.

## F.   Count VI: State law claims for abuse of process against all individual defendants

Plaintiff alleges that all individual defendants are liable for abuse of process under

Pennsylvania state law. (Doc. No. 1 at 22.) Abuse of process is "the use of legal process against another 'primarily to accomplish a purpose for which it is not designed.'" Rosen v. Am. Bank of Rolla, 627 A.2d 190, 192 (Pa. Super. Ct. 1993) (citations omitted). The crux of an abuse of process claim is the "improper use of process after it has been issued, that is, a perversion of it." McGee v. Feege, 535 A.2d 1020, 1023 (Pa. 1987) (citations omitted). Under Pennsylvania law, "abuse of process" and "malicious use of process" are similar to, but ultimately distinct from one another. See, e.g., id. The critical difference between the two claims is that "[m]alicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued." Id. (citations omitted).

Here, Plaintiff pleads that the individual defendants abused legal process by, "unlawfully, willfully and intentionally abus[ing] the procedure of drug and alcohol testing, mental evaluation, and involuntary [evaluation under MHPA Section] 302 without probable cause and despite recurring indications the Plaintiff had done nothing wrong." (Doc. No. 1 ¶ 132; Doc. No. 22 at 18.) He further alleges that "[t]hough there was no probable cause to detain [him]," Defendants used every possible avenue to hold Plaintiff." (Doc. No. 22 at 18.)

Although it is not stated directly, Plaintiff's claim appears to allege that Defendants Barbagello, Doe I, Doe II, Biggins, and Boehs all initiated drug, alcohol, and mental health evaluations while knowing there was no basis for these tests, and with the specific purpose of causing him harm. (See Doc. No. 22 at 18.) Because Plaintiff's claim is based on the alleged wrongful initiation of actions related to his arrest rather than on the perversion of legal process already underway, it appears it would have been properly raised as a malicious use of process rather than abuse of process claim. As pled, Plaintiff's complaint does not state a claim for

abuse of process under Pennsylvania law.  At no point does Plaintiff precisely allege what process individual Defendants perverted when they conducted drug and alcohol testing on him and submitted him to an involuntary mental health evaluation, as is required to establish a <u>prima facie</u> case for abuse of process.  <u>See</u> <u>McGee</u>, 535 A.2d at 1023.  Accordingly, Plaintiff fails to state a claim for state law abuse of process, and the Court finds that Plaintiff's abuse of process claims should be dismissed.

### G. Count VII: State law claim for intentional infliction of emotional distress against all individual defendants

Plaintiff brings state law claims of intentional infliction of emotional distress ("IIED") against all individual defendants for their conduct relating to Plaintiff's detention on March 21-22, 2012.  (Doc. No. 1 at 23.)  To establish an IIED claim, Plaintiff must show: (1) extreme and outrageous conduct; (2) done intentionally or recklessly; (3) that causes emotional distress; and (4) the distress is severe.  <u>Chuy v. Phila. Eagles Football Club</u>, 595 F.2d 1265, 1273 (3d Cir. 1979).  The conduct must "go beyond all possible bounds of decency, and . . . [be] regarded as atrocious, and utterly intolerable in a civilized society."  <u>Dull v. W. Manchester Twp. Police Dep't.</u>, 604 F. Supp. 2d 739, 756 (M.D. Pa. 2009) (citations omitted).  Further, to succeed on an IIED claim, Plaintiff must show "some type of resulting physical harm due to the defendant's outrageous conduct."  <u>Reedy v. Evanson</u>, 615 F.3d 197, 231 (3d Cir. 2010).

Plaintiff has not alleged any facts to show that individual defendants' conduct extended "beyond all possible bounds of decency," or that he experienced "physical harm due to the defendant[s'] outrageous conduct."  <u>Id.</u>; <u>Dull</u>, 604 F. Supp. 2d at 755.  Instead, he advances several conclusory statements, such as "Defendants conduct was extreme and outrageous, beyond all possible bounds of decency and utterly intolerable in a civilized society," and "[t]he

actions of the Defendants were the cause of Plaintiff's distress."  (Doc. No. 1 ¶¶ 137-38.)

Because Plaintiff has not pled facts showing that he experienced physical harm from Defendants'

allegedly outrageous conduct, he has not properly stated a claim for IIED.[5]  See Reedy, 615 F.3d

at 231.  Accordingly, the Court finds that Plaintiff's state law claims for intentional infliction of

emotional distress should be dismissed as to all individual defendants.

### H.     Qualified immunity

Defendants Biggins, Boehs, and Barbagello assert that they are entitled to qualified

immunity for all claims brought against them in their official capacities.  (Doc. No. 15 at 31.)

Qualified immunity protects "government officials performing discretionary functions" by

"shield[ing them] from liability for civil damages insofar as their conduct does not violate clearly

established statutory or constitutional rights of which a reasonable person would have known."

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).  Qualified immunity shields the government

officials from facing lawsuits.  Saucier v. Katz, 533 U.S. 194, 200 (2001).  To determine whether

an official is entitled to qualified immunity, the Court must decide, in either order, whether,

"taken in the light most favorable to the party asserting the injury . . . the facts alleged show the

officer's conduct violated a constitutional right," and "whether the right was clearly established"

at the time of the official's conduct, in that a reasonable officer would have known his conduct

was unlawful.  Id. at 201; Egolf v. Witmer, 526 F.3d 104, 110 (3d Cir. 2008) (citations omitted).

---

[5] Plaintiff cites Toney v. Chester County Hospital for the proposition that "no physical impact" is required to state a claim for intentional infliction of emotional distress.  36 A.3d 83, 100 (Pa. 2011).  (Doc. No. 22 at 23.)  However, Toney involved a claim for negligent infliction of emotional distress, which requires a plaintiff to meet a different standard than that of intentional infliction of emotional distress.  Id.  Therefore, Toney is irrelevant to Plaintiff's claim.

Plaintiff alleges that Defendant Barbagello violated his Fourth Amendment rights against unlawful seizure, search, detention, and arrest, and that Defendants Barbagello, Boehs, and Biggins violated his Fifth and Fourteenth Amendment substantive due process rights. (Doc. No. 1 at 14, 16.) Because the Court finds that Plaintiff's Fourteenth Amendment claims against Defendants Boehs and Biggins should be dismissed, as should Plaintiff's Fifth Amendment substantive due process claims against all Defendants, Plaintiff has no remaining constitutional claims against Defendants Boehs and Biggins, and thus there is no need for a qualified immunity discussion with respect to these Defendants. However, Plaintiff adequately states claims for unlawful seizure, search, arrest, and detention against Defendant Barbagello under the Fourth Amendment. See Section III.A. Therefore, the Court must determine whether Defendant Barbagello can assert qualified immunity in response to Plaintiff's Fourth Amendment claims.

### 1. Whether officers violated a constitutional right

Taking the facts as alleged by Plaintiff as true, the Court has determined that Plaintiff has adequately stated claims for unlawful seizure, search, arrest, and detention under the Fourth Amendment against Defendant Barbagello. See Section III.A.1-4. The Court will therefore assess whether Defendant Barbagello's conduct violated clearly established law such that every "reasonable official would have understood that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635 (1987). The Court need not rely on a precedential case that is factually identical, but "existing precedent must have placed the statutory or constitutional question beyond debate." Ashcroft v. al-Kidd, 131 S.Ct. 2074, 2083 (2011) (citations omitted).

Considering the facts in the light most favorable to Plaintiff, Defendant Barbagello has not established that his conduct did not violate any clearly established right. Defendant

Barbagello merely states that "no right was violated" by his conduct, and that his stop of Plaintiff was lawful. (Doc. No. 15 at 33.) Such conclusory statements are insufficient to meet the pleading burden for qualified immunity. See Thomas v. Independence Twp., 463 F.3d 285, 293-94 (3d Cir. 2006) ("[T]he burden of pleading qualified immunity rests with the defendant, not the plaintiff . . . . [P]laintiff has no obligation to plead a violation of clearly established law in order to avoid dismissal on qualified immunity grounds."). Id. at 293.

### a. Unlawful seizure and qualified immunity

Plaintiff has stated a claim for unlawful seizure against Defendant Barbagello based on Defendant Barbagello's conduct after Plaintiff passed the Portable Breath Test, which indicated that he was not under the influence of alcohol. (Doc. No. 1 ¶ 36.) As discussed in Section III.A.1, the Supreme Court and the Third Circuit have long established the lawful bounds of a traffic stop, and delineated the standard for when a stop becomes an unlawful detention or seizure. See, e.g., Illinois v. Caballes, 543 U.S. 405, 407 (2005). The Court thus finds that a reasonable police officer should have known that by disrupting Plaintiff's freedom of movement by refusing to allow him to leave the scene of the traffic stop, handcuffing him, transporting him to police barracks, and submitting him to further sobriety tests and a mental health evaluation, Defendant Barbagello effected a seizure of Plaintiff. See James v. City of Wilkes-Barre, 700 F.3d 675, 681 (3d Cir. 2012). The Court will deny Defendant Barbagello's motion to dismiss on the basis of qualified immunity as to Plaintiff's Fourth Amendment unlawful seizure claim.

### b. Unlawful search and qualified immunity

Plaintiff alleges that Defendant Barbagello, along with Defendant Doe I, performed a full search of Plaintiff's pockets in violation of his Fourth Amendment right to be free from unlawful

searches. (Doc. No 1 ¶ 24; Doc. No. 22 at 13.) As discussed in Section III.A.2, the Supreme

Court has clear, long-established precedent establishing warrantless searches as per se

unreasonable. See Terry v. Ohio, 392 U.S. 1, 30 (1968) (delineating the bounds between a "stop

and frisk" requiring only reasonable, articulable suspicion, and a warrantlesss search, requiring

probable cause). There is no question that a reasonable officer would know that he cannot

perform a full search of an individual's person without a warrant or probable cause. Berkemer v.

McCarty, 468 U.S. 420, 439 (1984). Thus, Defendant Barbagello is not entitled to qualified

immunity with regard to Plaintiff's unlawful search claim. Accordingly, the Court will deny

Defendant Barbagello's motion to dismiss Plaintiff's unlawful search claim on the basis of

qualified immunity.

### c.      Unlawful arrest and qualified immunity

As discussed in Section III.A.3, under the facts as pled, Defendant Barbagello's refusal to

allow Plaintiff to leave on his own accord after he passed the Portable Breath Test constituted an

unlawful restraint of Plaintiff's freedom of movement rising to the level of an arrest without

probable cause. Courts use a totality of the circumstances test and a reasonableness standard to

determine whether a police officer's conduct in restricting the movement of an individual

constitutes an arrest. United States v. Edwards, 53 F.3d 616, 619 (3d Cir. 1994). A reasonable

officer would know that in refusing to allow Plaintiff to leave on his own, handcuffing him,

transporting him to the Pennsylvania State Police Barracks, and reading him his Miranda rights,

he exerted control and will over Plaintiff rising to the level of arrest. See id.

Warrantless arrests are unlawful if the arresting officer lacks probable cause. Carroll v.

United States, 267 U.S. 132, 156 (1925). At this time, Defendant Barbagello has not established

that he had probable cause to arrest Plaintiff. Defendant Barbagello merely asserts that his actions "were reasonable under the circumstances and there is no clearly established right to indicate otherwise," which does not meet the pleading requirement for a motion to dismiss based on qualified immunity. Accordingly, at this time the Court cannot conclude that Defendant Barbagello is entitled to qualified immunity on Plaintiff's claim of unlawful arrest under the Fourth Amendment. The Court therefore will deny Defendant Barbagello's motion to dismiss Plaintiff's unlawful arrest claim against him on the basis of qualified immunity.

### d. Unlawful detention and qualified immunity

Defendant Barbagello also asserts that he is entitled to qualified immunity on Plaintiff's Fourth Amendment unlawful detention claim. (Doc. No. 15 at 25-26.) As discussed in Section III.A, a claim for unlawful detention under the Fourth Amendment requires Plaintiff to establish that he was subjected to a Fourth Amendment seizure without probable cause. See James v. City of Wilkes-Barre, 700 F.3d 675, 682 (3d Cir. 2012). Plaintiff has alleged facts sufficient to support his claim for unlawful seizure under the Fourth Amendment. See Sections III.A.1; III.A.3.b. The Court has also found that as the moving party, Defendant Barbagello failed to establish that he had probable cause to arrest Plaintiff. See Section III.H.1.c. Thus, the Court's analysis of Defendant Barbagello's motion to dismiss Plaintiff's Fourth Amendment claim for unlawful detention on the basis of qualified immunity is identical to that for Defendant Barbagello's motion to dismiss Plaintiff's Fourth Amendment claims for unlawful seizure and, to the extent it relates to probable cause, that for unlawful arrest. Accordingly, for the same reasons outlined above in the Court's qualified immunity discussion pertaining to unlawful seizure and probable cause for arrest, the Court will deny Defendant Barbagello's motion to

dismiss Plaintiff's Fourth Amendment claim for unlawful detention.

**I.     Defendants' motion to dismiss Plaintiff's punitive damages claim**

Plaintiff prays for punitive damages against all individual Defendants.  (Doc. No. 1 at 25.)  However, all federal constitutional claims against Defendants Boehs and Biggins have been dismissed, leaving Plaintiff's Fourth Amendment claims against Defendants Barbagello, Doe I, and Doe II as the only remaining federal constitutional claims at this stage.  Accordingly, punitive damages pursuant to Section 1983 would only be available to Plaintiff as to Defendants Barbagello, Doe I, and Doe II in their individual capacities.

For federal civil rights complaints brought under Section 1983, punitive damages are available "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 45 (1983).  Considering the facts in the light most favorable to Plaintiff, a jury could find that Defendants Barbagello, Doe I, and Doe II acted with reckless indifference as to Plaintiff's Fourth Amendment rights, because as police officers, they should have known that their conduct in detaining, handcuffing, and transporting Plaintiff to police barracks, as well as subjecting him to drug testing and an involuntary mental evaluation, violated Plaintiff's Fourth Amendment rights to be free from unlawful seizure, search, arrest, and detention.  See, e.g., Brewer v. Hayman, No. 06-6294, 2009 WL 2139429, at *8 (D.N.J. July 10, 2009) (denying Defendants' motion for summary judgment on punitive damages claim stemming from alleged Fourth Amendment violations by police officers). Id.  Because it is possible for a jury to find that Defendants Barbagello, Doe I, and Doe II were recklessly indifferent to Plaintiff's Fourth Amendment rights, the Court will not dismiss Plaintiff's claim for punitive

damages against Defendants Barbagello, Doe I, and Doe II at this stage.

Plaintiff has also stated state law claims against Defendants Barbagello, Doe I, and Doe II for false arrest and imprisonment. (Doc. No. 1 at 21.) Under Pennsylvania law, "the assessment of punitive damages is proper whenever a party's actions are of such an outrageous nature as to demonstrate intentional, willful, wanton or reckless conduct resulting from either an evil motive or because of a reckless indifference to the rights of others." Angelopoulos v. Lazarus PA Inc., 884 A.2d 255, 262 (Pa. Super. Ct. 2005) (citation omitted). In this instance, it is possible for a jury to find that Defendants Barbagello, Doe I, and Doe II acted with reckless indifference to Plaintiff's right to be free from false arrest and imprisonment. See id. Thus, the Court will deny Defendants Barbagello, Doe I, and Doe II's motion to dismiss Plaintiff's claim for punitive damages for his state law claim of false arrest and imprisonment.

IV.     CONCLUSION

Upon review of Plaintiff's complaint, the exhibits attached thereto, and the parties' briefs relating to Defendants' motion to dismiss, the Court will grant Defendants' motion in part, and deny in part.

A.     Surviving claims

The Court finds that in Count I, Plaintiff sufficiently alleges facts to state claims for violations of the Fourth Amendment against Defendants Barbagello, Doe I, and Doe II. Further, the Court finds that Defendant Barbagello is not at this time entitled to qualified immunity with regard to Plaintiff's Fourth Amendment claims. Additionally, the Court finds that Plaintiff sufficiently alleges facts in Count V to state a claim for state law false arrest and imprisonment against Defendants Barbagello, Doe I, and Doe II. Finally, the Court will not dismiss Plaintiff's

claims for punitive damages against Defendants Barbagello, Doe I, and Doe II at this time.

**B.      Claims that will be dismissed**

The Court finds that Plaintiff fails to allege sufficient facts in Count V to plead state law false arrest and imprisonment claims against Defendants Boehs and Biggins.  Accordingly, Plaintiff's Count V claims for false arrest and imprisonment against Defendants Boehs and Biggins will be dismissed.

Plaintiff also fails to allege facts sufficient to support the following: Fifth and Fourteenth Amendment substantive due process claims in Count II; excessive force–failure to intervene pursuant to 42 U.S.C. § 1983 in Count III; Monell liability claims in Count IV; and state law abuse of process and intentional infliction of emotional distress claims in Counts VI and VII. Accordingly, Plaintiff's claims in Counts II, IV, VI, and VII will be dismissed as to all defendants.

Plaintiff's Count II Fourteenth Amendment substantive due process claims against Defendants Barbagello, Doe I, and Doe II will be dismissed without prejudice, and Plaintiff will have the opportunity to file an amended complaint with respect to these claims.  An order consistent with this memorandum follows.