# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| CARL KAUFFMAN, III, | : | CIVIL NO. 1:13-CV-659 |
|---|---|---|
| Plaintiff, | : | (Judge Kane) |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| DANIEL BARBAGELLO, et al., | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

### I. Statement of Facts and of the Case.

This case, which currently comes before us for consideration of a motion for summary judgment filed by the plaintiff, (Doc. 67.), raises legal questions concerning the reasonableness of the detention of the plaintiff, Carl Kauffman, following a police traffic stop. These legal questions, in turn, are cast against a disputed factual backdrop, but a factual backdrop which reveals that police were confronted with bizarre behavior by the plaintiff, behavior that led to cascading concerns regarding whether Kauffman was chemically or emotionally impaired in a fashion which made him a danger to operate a motor vehicle. When these factual disputes are resolved in

favor of the defendants, the parties opposing this particular summary judgment motion, the evidence would permit a finding of the following material facts:

On the evening of March 21, 2012, the plaintiff, Carl Kauffman, was attending night classes at the Harrisburg Area Community College. Following his night classes, Kauffman left the campus, riding on his motorcycle. As Kauffman rode the motorcycle, Officer Barbagello, a Cumberland Township Police Officer, who was on patrol, observed Kauffman illegally passing two vehicles in a no-passing zone. Specifically, Kauffman passed the vehicles on the right shoulder of the roadway. As he followed Kauffman and attempted to pull him over, Officer Barbagello observed Kauffman driving behind the fog line and in the traffic way, continually teetering back and forth. Officer Barbagello followed Kauffman for approximately a quarter mile with his lights flashing before Kauffman pulled over. When Kauffman finally stopped his motorcycle he pulled the wrong way into a one-way parking lot.

A traffic stop then ensued. In the course of this traffic stop, Officer Barbagello was confronted by what he perceived to be increasingly bizarre behavior on Kauffman's part. Kauffman was distraught and nervous, and his eyes were bloodshot, a potential indication of drug and alcohol use. Moreover, Kauffman was breathing heavily as the officer approached him, and exuded a thick flowery odor, which the officer suspected could be a masking agent used to conceal some other scent.

Kauffman also struggled with simple questions, and it took several attempts for Kauffman to understand, and comply with, the police officer's request for his license and registration. Kauffman was also emotionally overwrought and began weeping as the officer conducted this traffic stop.

This curious behavior led the officer to be concerned that Kauffman was impaired in some fashion and police asked Kauffman to submit to a field sobriety test, which he agreed to do. As part of this test Kauffman was provided simple instructions regarding tasks he was asked to perform, but failed portions of the test due to his inability to understand and follow these instructions. At the close of the test Kauffman began weeping again and made odd comments to the police stating that he felt like he was in a movie, that police were going to tackle him, and described his encounter as surreal while voicing a fear that police were trying to trick him.

While a Breathalyzer test administered to Kauffman showed no signs of alcohol intoxication, Officer Barbagello remained concerned that Kauffman was impaired in some fashion and was unsafe to operate a motorcycle late at night. Police offered Kauffman an opportunity to contact someone to get a ride home, but he declined this offer.[1] After consulting with his superiors, and speaking with Kauffman, Officer

---

[1] It seems that Kauffman may have at some time during this stop contacted his wife and misled her, concealing the police stop and telling her that he was staying after class to speak with a faculty member.

Barbagello offered Kauffman and opportunity to meet with a Pennsylvania State Police Trooper, Trooper Bivens, who was trained as a Drug Recognition Expert to perform evaluations on subjects following a twelve (12) step scientific systematic process to determine whether an individual in impaired by drugs and, if so, the general category of drugs the individual may have taken or, alternatively, whether the individual was suffering from a medical condition impairing his or her judgment. Kauffman agreed to undergo this evaluation and was transported by police to the State Police Barracks for this evaluation.

Following this evaluation Trooper Bivens opined that Kauffman was not under the influence of any controlled substance. Police remained concerned, however, that Kauffman might be suffering from some medical or emotional condition or impairment. Police then offered Kauffman the opportunity to call his wife, or the choice between being transported to the jail or the hospital. Kauffman declined to contact his wife, and instead chose to be transported to the hospital where he underwent a mental health evaluation.

Staff who assessed Kauffman at the hospital characterized his behavior as very bizarre, noting that Kauffman was tearful, and extremely anxious. Ultimately Kauffman was diagnosed as suffering from anxiety and a stress reaction, but it was

determined that Kauffman's condition did not meet the exacting standards for involuntary mental health commitment under state law, and he was released.

It is against this backdrop that Kauffman has now filed a motion for summary judgment, (Doc. 67.), arguing that he is entitled to a judgment as a matter of law in his favor on his claim that the police conduct in the case violated his clearly established rights under the Fourth Amendment to the United States Constitution. For the reasons set forth below, we conclude, at a minimum, that factual questions preclude a summary judgment in favor of the plaintiff in this case, and recommend that the plaintiff's motion for summary judgment be denied.[2]

**II.     Discussion**

    **A.     Summary Judgment - Rule 56, Standard of Review**

Federal courts are permitted to summarily adjudicate an action in order to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a jury trial would, therefore, "be an empty and unnecessary formality," Peynado v. Sabol, No. 09-355, 2010 U.S. Dist. LEXIS 134131, 2010 WL 5300563, at *2 (M.D. Pa. Dec. 20, 2010). Rule 56 specifically provides that "[t]he judgment sought should be rendered if the pleadings, the

---

[2]We note that the defendants have also moved for summary judgment in this matter. We will address these summary judgment motions by a separate Report and Recommendation.

discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56. The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving

party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Finally, it is emphatically not the province of the court to weigh evidence, or assess credibility, when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, Anderson, 477 U.S. at 255, and draw all reasonable inferences in the light most favorable to the non-moving party, Big Apple BMW, Inc. v. BMW of North America, Inc., 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true. Id. Additionally, the court is not to decide whether the evidence unquestionably favors one side or the other, or to make credibility determinations, but instead must decide whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. Id. at 252; see also Big Apple BMW, 974 F.2d at 1363. In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not match, item for item, each piece of evidence proffered by the movant. In practical terms, if the opponent has exceeded the "mere scintilla" threshold and has offered a genuine issue of material fact, then the court cannot credit the movant's version of events against the opponent, even if the quantity of the movant's evidence far outweighs that of its opponent. It thus remains the province of the fact finder to ascertain the believability and weight of the evidence.

Id. In contrast, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (internal quotation marks omitted); NAACP v. North Hudson Reg'l Fire & Rescue, 665 F.3d 464, 476 (3d Cir. 2011).

It is through this analytical lens that we now assess the plaintiff's current motion for summary judgment.

### B. Disputed Material Issues of Fact Preclude Summary Judgment for the Plaintiff in This Case

In this case the gist of Kauffman's claim is that the defendants violated his constitutional rights through their unlawful arrest and detention of the plaintiff on March 21, 2012. This claim implicates Kauffman's rights under the Fourth Amendment to the United States Constitution, which provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and now Warrants shall issue, but upon probable cause, supported by

> Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend IV.

In this case, though, we must consider the propriety of the police action both in the context of criminal law enforcement and through the separate analytical lens of police public safety responsibilities when presented with a person who may be suffering from a mental or emotional impairment which could potentially render that individual a danger to himself or others.

Each of these benchmarks for assessing police conduct has a substantial factual component to it. For example, at the outset, " 'an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.' Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); see also Prouse, 440 U.S. at 663, 99 S.Ct. 1391 (stop of vehicle must be based on reasonable suspicion of criminal activity)." United States v. Johnson, 592 F.3d 442, 447 (3d Cir. 2010). "When assessing whether the vehicle stop was supported by reasonable suspicion, we must consider the 'totality of the circumstances to determine whether "the detaining officers ... [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity." ' United States v. Brown, 448 F.3d 239, 246 (3d

Cir.2006) (quoting United States v. Cortez, 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981))." United States v. Johnson, 592 F.3d 442, 448-49 (3d Cir. 2010). Thus, the legal standards governing investigative detentions call for a fact-bound analysis of the totality of the underlying circumstances in order to determine whether a reasonable suspicion existed to initially detain a suspect.

Beyond an initial investigative detention police are empowered to arrest those persons as to whom probable cause exists to believe that they have committed a criminal offense. Like the legal tests governing an investigative detention, the standards for assessing whether an arrest has occurred and whether police possessed probable cause to arrest are often largely factual determinations. Accordingly, "[t]o state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause. See Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir.1995); Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir.1988)." James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012). An arrest without probable cause is a constitutional violation that may be redressed under 42 U.S.C. § 1983. See Walmsley v. Philadelphia, 872 F.2d 546, 551 (3d Cir. 1989) (citing Patzig v. O'Neill, 577 F.2d 841, 848 (3d Cir. 1978). However, '[w]e examine the totality of the circumstances in determining

whether a seizure [or arrest] occurred." James v. City of Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012).

Likewise, for purposes of the Fourth Amendment, probable cause to arrest exists "whenever reasonably trustworthy information or circumstances within a police officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been committed by the person being arrested." U.S. v. Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91 (1964)). An arrest by a police officer without a warrant "is reasonable under the Fourth Amendment where there is probable cause to believe that a criminal offense has been or is being committed." Devenpeck v. Alford, 543 U.S. 146, 152 (2004). In conducting an inquiry into whether probable cause to arrest existed, a court should consider the totality of the circumstances presented, and "must assess the knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest." United States v. Stubbs, 281 F.3d 109, 122 (3d Cir. 2002).

Beyond these criminal law enforcement tenets, the reasonableness of the police officer's conduct must also be viewed in the context of civil, public safety concerns when police encounter those who may be suffering from some degree of mental or

emotional impairment which may render them a danger to themselves or others. In this specific factual context, it is well-settled that:

> The Fourth Amendment applies to seizures in civil, as well as criminal, proceedings. See O'Connor v. Ortega, 480 U.S. 709, 714–15, 107 S.Ct. 1492, 1496, 94 L.Ed.2d 714 (1987). The fundamental inquiry in such proceedings, however, remains whether the government's conduct is reasonable under the circumstances. See Cady v. Dombrowski, 413 U.S. 433, 439–40, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973). Griffin v. Wisconsin, 483 U.S. 868, 873, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709 (1987) (citations omitted). Construing Griffin, the Court of Appeals for the First Circuit held that the temporary involuntary commitment of those deemed dangerous to themselves or others qualifies as a "special need" permitting the state to act without a warrant. See McCabe, 77 F.3d at 549. We agree.

Doby v. DeCrescenzo, 171 F.3d 858, 871 (3d Cir. 1999). As this Court has observed:

> A recognized exception to the warrant requirement may occur when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." Griffin v. Wisconsin, 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) . . . . Seizures pursuant to the [Pennsylvania Mental Health Statute] can fall within the "special needs" exception to the warrant and probable cause requirements. See Doby, 171 F.3d at 871 ("[T]he temporary involuntary commitment of those deemed dangerous to themselves or others [pursuant to the MHPA] qualifies as a 'special need' permitting the state to act without a warrant.").

Mayo v. City of York, PA, No. 1:04-CV-2272, 2007 WL 91599, at *6 (M.D. Pa. Jan. 9, 2007). Pennsylvania law, in turn, "allows peace officers who observe an individual behaving in such a way that gives an officer 'reasonable grounds to believe that [the

individual] is severely mentally disabled and in need of immediate treatment,' to submit that individual to a mental health evaluation by medical personnel who are to determine whether that individual should be involuntarily committed. 50 Pa. Stat. Ann. tit. 50 § 7302(a)(2). The MHPA further provides civil and criminal immunity for peace officers participating in an involuntary commitment process, so long as their conduct is without 'willful misconduct or gross negligence.' 50 Pa. Stat. Ann. § 7114(a)." Kauffman v. Barbagello, No. 1:13-C-00659, 2013 WL 6388487, at *9 (M.D. Pa. Dec. 5, 2013).

Thus, it is evident that an analysis of the March 21, 2012, detention of Mr. Kauffman by police entails, at a minimum, a fact-bound evaluation of all of the circumstances presented to the police that evening, and an evaluation of those factual matters against the legal standards defining both those officers' law enforcement duties and their public safety responsibilities. When we undertake this assessment, and view the evidence in a light most favorable to the defendants as we are required to do, it is apparent that the plaintiff is not entitled to summary judgment in this case.

That evidence, viewed in the light most favorable to the defense, provides ample grounds for the initial stop of Kauffman, who was observed by police violating traffic laws. Once that stop was made, Kauffman's bizarre behavior justified a further investigative detention as police tried to determine whether Kauffman was chemically

or mentally impaired in a way which violated the law or rendered him unsafe to operate a motorcycle. The evidence would also allow a fact-finder to conclude that police proceeded in a reasonable and systematic way in resolving these articulable suspicions, conducting field sobriety tests and Breathalyzer examinations, followed by drug and mental health evaluations. The evidence also suggests that Kauffman was offered a simple expedient to avoid this detention by calling someone to drive him home, but Kauffman consistently refused that option.

In short, this evidence would permit a finding that police acted reasonably when the detained Kauffman, first as a law enforcement matter, and later in order to evaluate his mental health.[3] Further, any assessment of the reasonableness of this action is, in large measure, a function of an evaluation of the bizarre choices and conduct of the plaintiff himself, actions, deeds and words which could be construed as causing a genuine, and well-founded concern that Kauffman was chemically or emotionally impaired in a way which could present a danger to himself or others. Given these

---

[3]We note that the plaintiff's motion for summary judgment seems to evaluate this detention solely in the context of Fourth Amendment relating to arrests. Given the separate, and well-founded, mental health concerns that appear to have inspired some of these law enforcement choices and decisions, we believe that this focus is too narrow. Further given that seizures pursuant to the Pennsylvania Mental Health Statute can fall within the "special needs" exception to the warrant and probable cause requirements, See Doby, 171 F.3d at 871, the failure to assess this detention as a mental health evaluation undermines the plaintiff's summary judgment motion.

facts, it cannot be said that Kauffman is entitled to a judgment as a matter of law in his favor on this Fourth Amendment claim. Therefore, it is recommended that the plaintiff's motion for summary judgment, (Doc. 67.), be DENIED.[4]

### III. Recommendation

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the plaintiff's motion for summary judgment, (Doc. 67.), be DENIED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of

---

[4] We further note that the defendants have moved for summary judgment, arguing in part, that they are entitled to qualified immunity from damages in this case since Mr. Kauffman's legal rights in this specific factual context were not clearly established at the time of this law enforcement encounter. The existence of this substantial and significant affirmative defense provides yet another ground for denying Kauffman's motion for summary judgment, which relies upon general Fourth Amendment principles to support his claim, general principles which may be insufficient to defeat a claim of qualified immunity, which looks more closely at the application of the law to the particular facts of a case. See Must v. West Hills Police Dep't., 126 F.Appx. 539 (3d Cir. 2005)(police officers entitled to qualified immunity for act of transporting individual to hospital for psychiatric evaluation).

those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 15th day of September 2015.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge