**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| CARL KAUFFMAN, III, | : | CIVIL NO. 1:13-CV-659 |
| | : | |
| Plaintiff, | : | (Judge Kane) |
| | : | |
| v. | : | |
| | : | (Magistrate Judge Carlson) |
| DANIEL BARBAGELLO, et al., | : | |
| | : | |
| Defendant. | : | |

## REPORT AND RECOMMENDATION

### I.    Statement of Facts and of the Case

This case comes before us for consideration of a motion for summary judgment filed by one of the defendants in this lawsuit, Pennsylvania State Police Trooper James Bivens. (Doc. 61.), and presents legal questions concerning the reasonableness of the detention of the plaintiff, Carl Kauffman, following a police traffic stop. These legal questions are cast against a factual backdrop which is marked by controversies between the plaintiff and the arresting officer, defendant Barbagello. For his part, Kauffman asserts that his arrest and prolonged detention were legally and factually unjustified. Defendant Barbagello, in turn, contends that police were confronted with bizarre behavior by the plaintiff, behavior that led to the arresting officers to have

concerns regarding whether Kauffman was chemically or emotionally impaired in a fashion which made him a danger to operate a motor vehicle.

It was in this factual context that Trooper Bivens was called upon to play a minor role in this case, to assess at the request of Officer Barbagello whether Kauffman was under the influence of any illegal controlled substances. Trooper Bivens performed this assessment, concluded that Kauffman was not chemically impaired, but seemed emotionally erratic, and reported those assessment results to the arresting officers.

Kauffman now sues Trooper Bivens, and alleges that the trooper's small role in these events violated his clearly established constitutional rights in a way which warrants personal liability by this defendant. For the reasons set forth below, we disagree and recommend that Trooper Bivens be dismissed from this lawsuit.

## A.     The Initial Stop of The Plaintiff

The essentially uncontested factual background of this case can be simply stated: On the evening of March 21, 2012, the plaintiff, Carl Kauffman, was attending night classes at the Harrisburg Area Community College. Following his night classes, Kauffman left the campus, riding on his motorcycle. As Kauffman rode the motorcycle, Officer Barbagello, a Cumberland Township Police Officer, who was on patrol, observed Kauffman illegally passing two vehicles in a no-passing zone.

Specifically, Kauffman passed the vehicles on the right shoulder of the roadway. As he followed Kauffman and attempted to pull him over, Officer Barbagello observed Kauffman driving behind the fog line and in the traffic way, continually teetering back and forth. Officer Barbagello followed Kauffman for approximately a quarter mile with his lights flashing before Kauffman pulled over. When Kauffman finally stopped his motorcycle he pulled the wrong way into a one-way parking lot.

A traffic stop then ensued. In the course of this traffic stop, Officer Barbagello was confronted by what he perceived to be bizarre behavior on Kauffman's part. Kauffman appeared distraught and nervous, and his eyes were bloodshot, a potential indication of drug and alcohol use. Moreover, Kauffman was breathing heavily as the officer approached him, and exuded a thick flowery odor, which the officer suspected could be a masking agent used to conceal some other scent. Kauffman also struggled with simple questions, and it took several attempts for Kauffman to understand, and comply with, the police officer's request for his license and registration. Kauffman was also emotionally overwrought and began weeping as the officer conducted this traffic stop. This behavior led the officer to ask Kauffman to submit to a field sobriety test, which he agreed to do. As part of this test Kauffman was provided simple instructions regarding tasks he was asked to perform, but failed portions of the test due to his inability to understand and follow these instructions. While a Breathalyzer test administered to Kauffman showed no signs of alcohol intoxication, Officer Barbagello

remained concerned that Kauffman was impaired in some fashion and was unsafe to operate a motorcycle late at night. Police offered Kauffman an opportunity to contact someone to get a ride home, but he declined this offer.[1] After consulting with his superiors, and speaking with Kauffman, Officer Barbagello offered Kauffman and opportunity to meet with a Pennsylvania State Police Trooper, Trooper Bivens, who was trained as a Drug Recognition Expert (DRE) to perform evaluations on subjects following a twelve (12) step scientific systematic process to determine whether an individual in impaired by drugs and, if so, the general category of drugs the individual may have taken or, alternatively, whether the individual was suffering from a medical condition impairing his or her judgment. Kauffman was then transported by police the State Police Barracks for this evaluation.

### B.   Trooper Bivens Conducts a Drug Recognition Examination of Kauffman Which Clears Kauffman of Drug Use

Trooper Bivens began this DRE evaluation by interviewing the arresting officer, Officer Barbagello, who explained that he had stopped Kauffman for passing two vehicles while riding on the right shoulder. (Doc. 62, ¶¶54-65.) Officer Barbagello further explained that after being stopped Kauffman was upset, forgot why he was stopped and where he was going, gave signs of being under the influence

---

[1] It seems that Kauffman may have at some time during this stop contacted his wife and misled her, concealing the police stop and telling her that he was staying after class to speak with a faculty member.

during a field sobriety test, but that no alcohol was detected in a Breathalyzer examination. (Id.) Barbagello told Trooper Bivens that he believed that Kauffman was laboring under some impairment and feared injury of plaintiff or others if he was permitted to operate his motorcycle. (Id.)

Trooper Bivens then performed a DRE evaluation on Kauffman at the request of Officer Barbagello. (Id.) At the conclusion of this evaluation, Trooper Bivens concluded that Kauffman was not chemically impaired, but expressed a concern that he was suffering from some emotional or mental health issue. (Id.)

This evaluation constituted the total sum of Trooper Bivens' involvement in this matter. He did not arrest Kauffman, and did not maintain custody over Kauffman. Trooper Bivens also did not make decisions regarding Kauffman's custody after the DRE evaluation concluded. Rather, those decisions were made by the arresting officer, Officer Barbagello.

### C.    Kauffman is Transported for a Mental Health Evaluation

Following this evaluation in which Trooper Bivens opined that Kauffman was not under the influence of any controlled substance Officer Barbagello provided Kauffman the opportunity to call his wife, or the choice between being transported to the jail or the hospital. Kauffman declined to contact his wife, and instead chose to be transported to the hospital where he underwent a mental health evaluation. Staff

who assessed Kauffman at the hospital characterized his behavior as very bizarre, noting that Kauffman was tearful, and extremely anxious. Ultimately Kauffman was diagnosed as suffering from anxiety and a stress reaction, but it was determined that Kauffman's condition did not meet the exacting standards for involuntary mental health commitment under state law, and he was released.

### D. Trooper Bivens' Motion for Summary Judgment

Notwithstanding Trooper Bivens' limited role in this episode, which consisted solely of finding that Kauffman was not chemically impaired, on March 21, 2012, Kauffman named Bivens as a defendant in this civil rights lawsuit, alleging that Bivens' assessment of the plaintiff violated his clearly established constitutional rights. Trooper Bivens has now moved for summary judgment on this claim, arguing that he is entitled to judgment in his favor as a matter of law because Kauffman has not shown that the trooper's conduct violated clearly established constitutional norms. (Doc. 61.) This motion is fully briefed by the parties, (Docs. 63, 79, and 83.), and is, therefore, ripe for resolution.

For the reasons set forth below, it is recommended that defendant Bivens' Motion for Summary Judgment be granted.

## II.     Discussion

### A.     Summary Judgment - Rule 56, Standard of Review

Federal courts are permitted to summarily adjudicate an action in order to dispose of those claims that do not present a "genuine issue as to any material fact," Fed. R. Civ. P. 56, and for which a jury trial would, therefore, "be an empty and unnecessary formality," Peynado v. Sabol, No. 09-355, 2010 U.S. Dist. LEXIS 134131, 2010 WL 5300563, at *2 (M.D. Pa. Dec. 20, 2010). Rule 56 specifically provides that "[t]he judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P., Rule 56. The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown

that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." <u>Berckeley Inv. Group. Ltd. v. Colkitt</u>, 455 F.3d 195, 201 (3d Cir. 2006); <u>accord</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment is appropriate. <u>Celotex</u>, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. <u>Anderson</u>, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. <u>Id.</u> at 252; <u>see</u> <u>also</u>, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986). In making this determination, the court must "consider all evidence in the light most favorable to the party opposing the motion." <u>A.W. v. Jersey City Pub. Schs.</u>, 486 F.3d 791, 794 (3d Cir. 2007).

Finally, it is emphatically not the province of the court to weigh evidence, or assess credibility, when passing upon a motion for summary judgment. Rather, in adjudicating the motion, the court must view the evidence presented in the light most favorable to the opposing party, <u>Anderson</u>, 477 U.S. at 255, and draw all reasonable

inferences in the light most favorable to the non-moving party, <u>Big Apple BMW, Inc.</u>
<u>v. BMW of North America, Inc.</u>, 974 F.2d 1358, 1363 (3d Cir. 1992). Where the non-
moving party's evidence contradicts the movant's, then the non-movant's must be
taken as true. <u>Id.</u> Additionally, the court is not to decide whether the evidence
unquestionably favors one side or the other, or to make credibility determinations, but
instead must decide whether a fair-minded jury could return a verdict for the plaintiff
on the evidence presented. <u>Id.</u> at 252; <u>see also</u> <u>Big Apple BMW</u>, 974 F.2d at 1363.
In reaching this determination, the Third Circuit has instructed that:

> To raise a genuine issue of material fact . . . the opponent need not
> match, item for item, each piece of evidence proffered by the movant. In
> practical terms, if the opponent has exceeded the "mere scintilla"
> threshold and has offered a genuine issue of material fact, then the court
> cannot credit the movant's version of events against the opponent, even
> if the quantity of the movant's evidence far outweighs that of its
> opponent. It thus remains the province of the fact finder to ascertain the
> believability and weight of the evidence.

<u>Id.</u> In contrast, "[w]here the record taken as a whole could not lead a rational trier of
fact to find for the non-moving party, there is no genuine issue for trial." <u>Matsushita</u>
<u>Elec. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986) (internal
quotation marks omitted); <u>NAACP v. North Hudson Reg'l Fire & Rescue</u>, 665 F.3d
464, 476 (3d Cir. 2011).

It is through this analytical lens that we now assess the plaintiff's current motion for summary judgment.

### B.     Defendant Bivens is Entitled to Qualified Immunity in This Case

In this case the gist of Kauffman's claim is that the defendants violated his constitutional rights through their unlawful arrest and detention of the plaintiff on March 21, 2012. This claim implicates Kauffman's rights under the Fourth Amendment to the United States Constitution, which provides that:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and now Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend IV.

In this case, though, we must consider the propriety of the police action both in the context of criminal law enforcement and through the separate analytical lens of police public safety responsibilities when presented with a person who may be suffering from a mental or emotional impairment which could potentially render that individual a danger to himself or others. Further, we must remain mindful of the fact that, while Kauffman must show the deprivation of a right secured by the United States Constitution or the laws of the United States, satisfying these elements alone

does not guarantee that Kauffman is entitled to recover damages from Trooper Bivens.

Government officials performing "discretionary functions," are insulated from suit if their conduct did not violate a "clearly established statutory or constitutional right[] of which a reasonable person would have known." Wilson v. Layne, 526 U.S. 603, 609 (1999); see also Pearson v. Callahan, 555 U.S. 223 (2009). This doctrine, known as qualified immunity, provides officials performing discretionary functions not only defense to liability, but also "immunity from suit." Crouse v. S. Lebanon Twp., 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.) (citations omitted). Qualified immunity

> balances two important interests – the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably. The protection of qualified immunity applies regardless of whether the government official's error is "a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."

Pearson, 555 U.S. at 231.

Determinations regarding qualified immunity, and its application in a given case, require a court to undertake two distinct inquiries. First, the court must evaluate whether the defendant violated a constitutional right. Saucier v. Katz, 533 U.S. 194, 201-02 (2001), abrogated in part by Pearson, 555 U.S. 223; Curley v. Klem, 499 F.3d 199, 206 (3d Cir. 2007); Williams v. Bitner, 455 F.3d 186, 190 (3d Cir. 2006). If the

defendant did not actually commit a constitutional violation, then the court must find in the defendant's favor. Saucier, 533 U.S. at 201. If the defendant is found to have committed a constitutional violation, the court must undertake a second, related inquiry to assess whether the constitutional right in question was "clearly established" at the time the defendant acted. Pearson, 555 U.S. at 232; Saucier, 533 U.S. at 201-02. The Supreme Court has instructed that a right is clearly established for purposes of qualified immunity if a reasonable state actor under the circumstances would understand that his conduct violates that right. Williams, 455 F.3d at 191 (citing Saucier, 533 U.S. at 202).

In order to find that a right is clearly established, "the right allegedly violated must be defined at the appropriate level of specificity." Wilson, 526 U.S. at 615. Thus, a plaintiff cannot defeat an qualified immunity claim in a Fourth Amendment constitutional tort case by merely asserting, as Kauffman does, that as a general matter the Fourth Amendment right to be free from unreasonable searches and seizure has been clearly established. (Doc. 79, p. 11.) Much more is needed to defeat a claim of qualified immunity in a Fourth Amendment context. Indeed, the Supreme Court has recently rejected efforts to use sweeping Fourth Amendment constitutional pronouncements to defeat qualified immunity claims, noting that: "Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as

the right to be free from unreasonable searches and seizures." City & Cnty. of San Francisco, Calif. v. Sheehan, 135 S. Ct. 1765, 1776, 191 L. Ed. 2d 856 (2015). See Anderson v. Creighton, 483 U.S. 635, 641 (1987).

The court is no longer required to conduct these two inquiries sequentially, Pearson, 555 U.S. at 239-40, and it may forego difficult constitutional issues and award qualified immunity to a defendant if it is apparent that the defendant did not violate rights that were clearly established at the time the defendant acted. Id. Where a court elects to address the alleged constitutional violations, however, the court's analysis of the merits for purposes of summary judgment merges with analysis of the deprivation of federal rights for purposes of qualified immunity. Gruenke v. Seip, 225 F.3d 290, 299-300 (3d Cir. 2000); Crouse, 668 F. Supp. 2d at 671; see also Grant v. City of Pittsburgh, 98 F.3d 116, 122 (3d Cir. 1996) ("[C]rucial to the resolution of [the] assertion of qualified immunity is a careful examination of the record . . . to establish . . . a detailed factual description of the actions of each individual defendant (viewed in a light most favorable to the plaintiff).")  Because qualified immunity entails a consideration of whether the law was clearly established at the time of a defendant's conduct, this defense, which focuses on the state of the law, presents a question of law for the court, and one which can often be resolved on summary judgment. See Montanez v. Thompson, 603 F.3d 243 (3d Cir. 2010).

A close factual congruence between settled case law and the conduct at issue in the instant case is required to defeat a claim of qualified immunity because the constitutional benchmarks for assessing police conduct in this setting have substantial factual components. For example, at the outset, " 'an officer may, consistent with the Fourth Amendment, conduct a brief, investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot.' Illinois v. Wardlow, 528 U.S. 119, 123, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); see also Prouse, 440 U.S. at 663, 99 S.Ct. 1391 (stop of vehicle must be based on reasonable suspicion of criminal activity)." United States v. Johnson, 592 F.3d 442, 447 (3d Cir. 2010). "When assessing whether the vehicle stop was supported by reasonable suspicion, we must consider the 'totality of the circumstances to determine whether "the detaining officers ... [had] a particularized and objective basis for suspecting the particular person stopped of criminal activity." ' United States v. Brown, 448 F.3d 239, 246 (3d Cir.2006) (quoting United States v. Cortez, 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981))." United States v. Johnson, 592 F.3d 442, 448-49 (3d Cir. 2010).

Beyond an initial investigative detention police are empowered to arrest those persons as to whom probable cause exists to believe that they have committed a criminal offense. Like the legal tests governing an investigative detention, the standards for assessing whether an arrest has occurred and whether police possessed

probable cause to arrest are often largely factual determinations.  Accordingly, "[t]o

state a claim for false arrest under the Fourth Amendment, a plaintiff must establish:

(1) that there was an arrest; and (2) that the arrest was made without probable cause.

See Groman v. Twp. of Manalapan, 47 F.3d 628, 634 (3d Cir.1995); Dowling v. City

of Phila., 855 F.2d 136, 141 (3d Cir.1988)."  James v. City of Wilkes-Barre, 700 F.3d

675, 680 (3d Cir. 2012).  An arrest without probable cause is a constitutional violation

that may be redressed under 42 U.S.C. § 1983.  See Walmsley v. Philadelphia, 872

F.2d 546, 551 (3d Cir. 1989) (citing Patzig v. O'Neill, 577 F.2d 841, 848 (3d Cir.

1978).  However, '[w]e examine the totality of the circumstances in determining

whether a seizure [or arrest] occurred."  James v. City of Wilkes-Barre, 700 F.3d 675,

680 (3d Cir. 2012).

Likewise, for purposes of the Fourth Amendment, probable cause to arrest exists

"whenever reasonably trustworthy information or circumstances within a police

officer's knowledge are sufficient to warrant a person of reasonable caution to

conclude that an offense has been committed by the person being arrested."  U.S. v.

Myers, 308 F.3d 251, 255 (3d Cir. 2002) (citing Beck v. Ohio, 379 U.S. 89, 91

(1964)).  An arrest by a police officer without a warrant "is reasonable under the

Fourth Amendment where there is probable cause to believe that a criminal offense

has been or is being committed."  Devenpeck v. Alford, 543 U.S. 146, 152 (2004).  In

conducting an inquiry into whether probable cause to arrest existed, a court should consider the totality of the circumstances presented, and "must assess the knowledge and information which the officers possessed at the time of arrest, coupled with the factual occurrences immediately precipitating the arrest." United States v. Stubbs, 281 F.3d 109, 122 (3d Cir. 2002).

Beyond these criminal law enforcement tenets, the reasonableness of the police officer's conduct must also be viewed in the context of civil, public safety concerns when police encounter those who may be suffering from some degree of mental or emotional impairment which may render them a danger to themselves or others. In this specific factual context, it is well-settled that:

> The Fourth Amendment applies to seizures in civil, as well as criminal, proceedings. See O'Connor v. Ortega, 480 U.S. 709, 714–15, 107 S.Ct. 1492, 1496, 94 L.Ed.2d 714 (1987). The fundamental inquiry in such proceedings, however, remains whether the government's conduct is reasonable under the circumstances. See Cady v. Dombrowski, 413 U.S. 433, 439–40, 93 S.Ct. 2523, 2527, 37 L.Ed.2d 706 (1973). Griffin v. Wisconsin, 483 U.S. 868, 873, 107 S.Ct. 3164, 3168, 97 L.Ed.2d 709 (1987) (citations omitted). Construing Griffin, the Court of Appeals for the First Circuit held that the temporary involuntary commitment of those deemed dangerous to themselves or others qualifies as a "special need" permitting the state to act without a warrant. See McCabe, 77 F.3d at 549. We agree.

Doby v. DeCrescenzo, 171 F.3d 858, 871 (3d Cir. 1999). As this Court has observed:

> A recognized exception to the warrant requirement may occur when "special needs, beyond the normal need for law enforcement, make the warrant and probable-cause requirement impracticable." Griffin v.

> Wisconsin, 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987) .
> . . . Seizures pursuant to the [Pennsylvania Mental Health Statute] can
> fall within the "special needs" exception to the warrant and probable
> cause requirements. See Doby, 171 F.3d at 871 ("[T]he temporary
> involuntary commitment of those deemed dangerous to themselves or
> others [pursuant to the MHPA] qualifies as a 'special need' permitting
> the state to act without a warrant.").

Mayo v. City of York, PA, No. 1:04-CV-2272, 2007 WL 91599, at *6 (M.D. Pa. Jan. 9, 2007). Pennsylvania law, in turn, "allows peace officers who observe an individual behaving in such a way that gives an officer 'reasonable grounds to believe that [the individual] is severely mentally disabled and in need of immediate treatment,' to submit that individual to a mental health evaluation by medical personnel who are to determine whether that individual should be involuntarily committed. 50 Pa. Stat. Ann. tit. 50 § 7302(a)(2). The MHPA further provides civil and criminal immunity for peace officers participating in an involuntary commitment process, so long as their conduct is without 'willful misconduct or gross negligence.' 50 Pa. Stat. Ann. § 7114(a)." Kauffman v. Barbagello, No. 1:13-C-00659, 2013 WL 6388487, at *9 (M.D. Pa. Dec. 5, 2013).

Guided by these benchmarks, as to Trooper Bivens, we find that his limited involvement in this matter, which consisted solely of conducting a drug recognition examination which found that Kauffman was not under the influence of drugs on March 21, 2012, did not violate any clearly established constitutional rights of the

-17-

plaintiff.  In reaching this conclusion we emphasize the very limited role played by Trooper Bivens in this episode.  Trooper Bivens did not initially arrest or detain Kauffman and played no role in the traffic stop which led to Kauffman's detention. He also played no decision-making role in the choices made by local police which led up to the DRE examination.  Furthermore, Trooper Bivens did not decide to continue to hold Kauffman after a DRE examination excluded chemical intoxication as a cause for Kauffman's behavior.  That decision was made by the arresting officer, Officer Barbagello.  Rather, Trooper Bivens' role in this matter was limited to conducting an examination of Kauffman at the request of another police department, an examination which concluded that Kauffman was not impaired due to drug use.

Thus, the role of Trooper Bivens was akin to that of a police officer who conducts some form of non-physically invasive field sobriety testing of a suspect who appears to be impaired in some fashion.  Such examinations have long been sustained by the courts in the face of a variety of constitutional challenges.  Michigan Dep't of State Police v. Sitz, 496 U.S. 444, 445, 110 S. Ct. 2481, 2483, 110 L. Ed. 2d 412 (1990); Pennsylvania v. Muniz, 496 U.S. 582, 588, 110 S. Ct. 2638, 2643, 110 L. Ed. 2d 528 (1990).  Furthermore, Trooper Bivens' examination actually exculpated Kauffman from suspected wrongdoing since Trooper Bivens' examination led him to conclude that Kauffman was not chemically impaired.  Therefore, while disputed

factual questions may remain with respect to the overall reasonableness of the on-going course of conduct between Kauffman and other police on March 21, 2012,[2] as to Trooper Bivens, we conclude that nothing could have alerted the trooper that, by examining Kauffman and exonerating him of any illegal drug use, he had violated "clearly established statutory or constitutional right[] of which a reasonable person would have known." <u>Wilson v. Layne</u>, 526 U.S. 603, 609 (1999). Therefore, Trooper Bivens should be entitled to qualified immunity from damages with respect to the Fourth Amendment claims in this case.[3]

----

[2]In this regard, we note that the district court has previously denied a qualified immunity claim made by defendant Barbagello in the context of a motion to dismiss, finding that Barbagello's conclusory statement that he did not violate Kauffman's rights was insufficient to sustain this affirmative defense at the pleadings stage. <u>See</u> <u>Kauffman v. Barbagello</u>, No. 1:13-CV-00659, 2013 WL 6388487, at *17 (M.D. Pa. Dec. 5, 2013). Notably, this prior ruling did not speak to the question of whether Trooper Bivens was entitled to qualified immunity. As for the continuing question of whether defendant Barbagello may avail himself of this defense, we will, by a separate Report and Recommendation, discuss whether Barbagello is entitled to summary judgment on these claims.


[3]Finally, we note that this proposed disposition of the plaintiff's federal constitutional claims, in turn, suggests the appropriate course for the court to follow in addressing any ancillary state law claims that the plaintiff may wish to pursue against this defendant. In a case such as this, where the jurisdiction of the federal court was premised on alleged federal claims which are found to be subject to dismissal, the proper course generally is for "the court [to] decline to exercise supplemental jurisdiction over the plaintiff's state law claims. 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction

## III.  **Recommendation**

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that defendant

Bivens' motion for summary judgment, (Doc. 61.), be GRANTED.

The Parties are further placed on notice that pursuant to Local Rule 72.3:

> Any party may object to a magistrate judge's proposed findings,
> recommendations or report addressing a motion or matter described in 28
> U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition
> of a prisoner case or a habeas corpus petition within fourteen (14) days
> after being served with a copy thereof.  Such party shall file with the
> clerk of court, and serve on the magistrate judge and all parties, written
> objections which shall specifically identify the portions of the proposed
> findings, recommendations or report to which objection is made and the
> basis for such objections.  The briefing requirements set forth in Local
> Rule 72.2 shall apply.  A judge shall make a de novo determination of
> those portions of the report or specified proposed findings or
> recommendations to which objection is made and may accept, reject, or

---

over a claim under subsection (a) if-... the district court has dismissed all claims
over which it has original jurisdiction."); United Mine Workers v. Gibbs, 383 U.S.
715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966) (holding that when federal causes
of action are dismissed, federal courts should not separately entertain pendent state
claims." Bronson v. White No. 05-2150, 2007 WL 3033865, *13 (M.D.Pa. Oct.
15, 2007)(Caputo, J.)(adopting report and recommendation dismissing ancillary
malpractice claim against dentist); see Ham v. Greer, 269 F. App'x 149, 151 (3d
Cir. 2008)("Because the District Court appropriately dismissed [the inmate's]
Bivens claims, no independent basis for federal jurisdiction remains.  In addition,
the District Court did not abuse its discretion in declining to address the state law
negligence claims.  28 U.S.C. § 1367(c)(3); see United Mine Workers of Am. v.
Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Tully v. Mott
Supermkts., Inc., 540 F.2d 187, 196 (3d Cir.1976).")  Since we have found that
these federal claims fail, this Court should not entertain the pendent state law
claims made by Kauffman against this defendant.

modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 8th day of October 2015.

*S/Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge